**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| SEUNG-WHAN CHOI,<br>Plaintiff, | ) | Case No.: |
| v. | ) | **JURY DEMANDED** |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and UNIVERSITY OF ILLINOIS AT CHICAGO<br>Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, Seung-Whan Choi ("Plaintiff"), by and through his undersigned attorneys, and for his Complaint at Law against the Defendants, the Board of Trustees of the University of Illinois ("Trustees"), and the University of Illinois at Chicago ("UIC") (collectively, "Defendants") states as follows:

**NATURE OF THE CASE**

1. That Counts I, II, and V are brought under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. section 2000e, as amended, and 42 U.S.C. § 1981 of the Civil Rights Act of 1866 ("Section 1981").

2. That Counts III and IV are brought under Title VII.

**JURISDICTION AND VENUE**

3. That this court has jurisdiction over the matter pursuant to Title VII, 42 U.S.C. §2000 *et seq.*, as amended and 28 U.S.C. §1331.

4. That venue in the Northern District of Illinois, Eastern Division is proper as the claim for relief arose in Chicago, Cook County, Illinois.

5. That Plaintiff has fulfilled all conditions precedent. On October 5, 2016, Plaintiff filed a charge at the Equal Employment Opportunity Commission ("EEOC") against Defendants for national origin discrimination, race discrimination, and retaliation. Charge No. 440-2017-00060 is attached hereto and incorporated herein as Exhibit A.

6. That on approximately October 19, 2016, Plaintiff received a Right to Sue Letter from the EEOC regarding the aforesaid charge. Dismissal and Notice of Rights is attached hereto and incorporated herein as Exhibit B.

**PARTIES**

7. Plaintiff is a male and resident of Illinois.

8. Plaintiff's race is Asian.

9. Plaintiff's national origin is Korean.

10. The Trustees maintain and control a public university located in Chicago, Illinois.

11. UIC is a public university and part of the University of Illinois college system maintained and controlled by the Trustees.

12. At all times pertinent herein, Defendants have engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

13. That at all times pertinent herein, Plaintiff was employed by Defendants.

**GENERAL ALLEGATIONS**

14. That Plaintiff incorporates the preceding paragraphs referenced herein.

15. That Plaintiff began his employment with Defendants in the fall of 2004.

16. That on May 3, 2010, Plaintiff was fired from a tenure-track position by Defendants.

17. That on February 17, 2011, after he was terminated by Defendants, Plaintiff brought a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), case no. 440-2011-02288, alleging race and national origin discrimination claims.

18. That the case was settled through mediation and led to Plaintiff's reinstatement on August 16, 2011 to the Department of Political Science ("the Department") with tenure and a promotion to associate professor.

19. That throughout his employment with Defendants, Plaintiff performed his assigned duties in a satisfactory manner, consistent with Defendants' standards, and his job performance met Defendants' legitimate expectations.

20. That Plaintiff has made significant research contributions and has a higher h-index (objective and widely used number that measures both the productivity and citation impact of the published body of work of a scholar) than those of his colleagues that are publically available.

21. That Plaintiff has received highly favorable teaching evaluations from undergraduate students.

22. That Plaintiff's graduate teaching record has met or exceeded those of his similarly situated colleagues.

23. That Plaintiff has served as a referee for more than 70 manuscripts for 30 different professional journals in the disciplines of political science, economics, sociology, military science, and interdisciplinary studies across several continents.

24. That in 2012, Plaintiff received the 2012 Outstanding Reviewer Award from *Political Research Quarterly*, one of the leading journals of political science.

25. That despite these achievements, Plaintiff has been systematically harassed and discriminated against due to his race, Asian, his national origin, Korean, and in retaliation for his complaint to the EEOC.

26. That plaintiff has been wrongfully accused of lacking in academic contributions.

27. That Plaintiff has been penalized for his alleged lack of academic and service contribution by delays to promotions and failures to provide adequate raises.

28. That Plaintiff failed to receive adequate raises at the same rate as his colleagues.

29. That Plaintiff's merit-based salary increase over the past five years is second to last among the 14 faculty members despite the fact that his academic performances exceeded those of the other faculty.

30. That Plaintiff has been ostracized within the Department and accused of not providing sufficient service to the Department.

31. That despite manifesting willingness (e.g., early last year Plaintiff volunteered for the department head position), Plaintiff has been given no appointments to any service or administrative positions.

32. That Plaintiff has not been asked to supervise any dissertations.

33. That approximately 3 years ago, the Department has stopped admitting doctoral students into Plaintiff's area of specialty, International Relations.

34. That approximately 3 years ago, and without his consultation, the Department decided to eliminate International Relations from the core sub-fields on which graduate students are required to concentrate for their degree.

35. That in September of 2016, Plaintiff was initially and wrongfully denied promotion to full professor due to the evaluations of those within his department.

36. That Evan McKenzie ("McKenzie"), Department head, undermined Plaintiff's teaching contribution by removing crucial teaching information from his promotion dossier to the University.

37. That at this time, McKenzie wrongfully accused Plaintiff of lacking in academic contributions.

38. That this denial was eventually overturned by Chancellor Michael Amiridis.

39. That during the summer of 2016, under McKenzie, the Department failed to inform Plaintiff of the hiring of a clinical assistant professor in the area of International Relations despite the fact that Plaintiff is the only department specialist in that area.

40. That approximately a year and a half ago, Plaintiff was the only senior faculty member excluded from a department meeting where the academic performance of junior faculty members was evaluated.

41. That Plaintiff was often not assigned a research assistant or given a late assignment of a research assistant, contrary to university policy.

42. That per the terms of his reinstatement, Plaintiff was assured that any and all of his privileges as faculty would not be limited or violated.

43. That faculty are eligible for sabbatical leave when they have 6 years of service.

44. That Plaintiff has 12 years of service.

45. That despite this, in October of 2016, Plaintiff was denied sabbatical leave by McKenzie because of his previous wrongful termination.

46. That in the fall of 2014, Plaintiff was denied information about paternity leave from McKenzie, which was related to a university program that would allow him modified teaching duties with full pay for a semester upon the birth of his son.

47. That in spring of 2013, Plaintiff requested then Department head Dick Simpson ("Simpson") consider hiring his wife under the university's "partner accommodation policy."

48. That Simpson took no action.

49. That Plaintiff's similarly situated colleague in the Department received an appointment as a spouse through the same program.

50. That contrary to university policy, Defendants failed to offer Plaintiff competitive counter-offers to outside job offers he received on three occasions.

51. That after the third refusal to make a counter-offer, in July of 2012, Simpson told Plaintiff that he was not welcome in the Department and that he should take the outside job offer and leave the Department.

## COUNT I- NATIONAL ORIGIN HARASSMENT

52. That Plaintiff incorporates the preceding paragraphs by reference here.

53. That Defendants' treatment of Plaintiff violated his right to be free from harassment on the basis of his national origin, as set forth by Title VII.

54. That during Plaintiff's employment with Defendants, Plaintiff performed up to and exceeded Defendants' legitimate expectations.

55. That Plaintiff is Korean.

56. That in the Spring of 2016, because Plaintiff was born and lived in South Korea, he was forced by the Department of Political Science ("Department") to teach an undergraduate course in Korean Politics.

57. That Plaintiff has no formal training in Korean Politics but was forced to teach this course under threat that his teaching evaluations by the department would be unfavorable.

58. That Plaintiff was required to teach this course under the direction of Dick Simpson, Dennis Jude, and Evan McKenzie.

59. That similarly situated United States-born individuals were not required to teach American Politics when such a course is outside of their specialty.

60. That, under the direction of Dick Simpson, Plaintiff was also required to teach statistics courses and was told that because Asians, especially Koreans, are very good at mathematics and statistics, Plaintiff was most qualified to teach the subject.

61. That no other tenured/tenure-track faculty have ever been required to teach the same statistics classes.

62. That on January 26, 2015, then Department head Dennis Judd ("Judd"), changed one of Plaintiff's undergraduate student's grades without consultation with him and due diligence investigation.

63. That when Plaintiff confronted Judd about changing the grade, he stated that Plaintiff, "as a foreigner, has to keep in mind who he is dealing with and what he is wishing for" he also stated that "he knows that many Koreans are stubborn and do not understand American culture of compromise when dealing with their boss."

64. That due to Plaintiff's national origin, he has been wrongfully accused of lacking in academic contributions, despite ample evidence to the contrary.

65. That due to Plaintiff's national origin, despite manifesting willingness, Plaintiff have been given no appointments to any service or administrative positions and has not been asked to supervise any dissertations.

66. That due to Plaintiff's national origin, Plaintiff has been penalized for his alleged lack of academic and service contribution by delays to promotions and failures to provide adequate raises.

67. That due to Plaintiff's national origin, the Department has stopped admitting doctoral students into his area of specialty, International Relations, and without his consultation, the Department decided to eliminate International Relations from the core sub-fields on which graduate students are required to concentrate for their degree.

68. That due to Plaintiff's national origin, he was initially and wrongfully denied tenure and promotion by the Department.

69. That due to Plaintiff's national origin, he has been denied access to input on hiring in his department, department meetings, research assistants, university programs such as paternity leave and the partner accommodation policy, and competitive counter-offers.

70. That all instances of harassment came from Plaintiff's supervisors who had the ability to dictate the conditions of Plaintiff's employment.

71. That the harassment to which Plaintiff was subjected to at the hands of Defendants and their agents, representatives and employees, was persistent in nature, unwelcome, extremely offensive,

humiliating, and had the effect of creating a hostile and intimidating work environment for Plaintiff.

72. That said continuous and persistent discrimination and harassment adversely affected the terms and conditions of Plaintiff's employment.

73. That as a direct and proximate result of said harassment and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost substantial income, including, but not limited to, wages and other employment benefits.

74. That as a further direct and proximate result of said harassment, Plaintiff has suffered great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and his friends, family, and colleagues.

75. That as a further direct and proximate result of said harassment, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, shameful embarrassment among his friends, colleagues, and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life. For example, Plaintiff can not have proper dental treatments for years due to high blood pressure that has been caused by depression, extreme mental anguish, outrage, and severe anxiety.

WHEREFORE, Plaintiff hereby requests that this Court provide the following equitable and legal remedies for relief:

a) Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way;

b) Order Defendants to cease and desist from unlawful discrimination and harassment on the basis of race in its employment practices;

c) Award Plaintiff backpay, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest;

d) Award Plaintiff costs of litigation, including reasonable attorneys' fees, expert fees, and expenses;

e) Award Plaintiff a judgment against Defendants for compensatory and punitive damages; and

f) Grant any other relief as this Court deems necessary and just.

**COUNT II- NATIONAL ORIGIN DISCRIMINATION**

76. That Plaintiff incorporates the preceding paragraphs by reference here.

77. That Defendants' treatment of Plaintiff violated his right to be free from discrimination on the basis of his national origin, as set forth by Title VII.

78. That during Plaintiff's employment with Defendants, Plaintiff performed up to and exceeded Defendants' legitimate expectations.

79. That Plaintiff is Korean.

80. That in the Spring of 2016, because Plaintiff was born and lived in South Korea, he was forced by the Department of Political Science ("Department") to teach an undergraduate course in Korean Politics.

81. That Plaintiff has no formal training in Korean Politics but was forced to teach this course under threat that his teaching evaluations by the department would be unfavorable.

82. That similarly situated United States-born individuals were not required to teach American Politics when such a course is outside of their specialty.

83. That Plaintiff was also required to teach statistics courses and was told that because Asians, especially Koreans, are very good at mathematics and statistics, Plaintiff is most qualified to teach the subject.

84. That no other tenured/tenure-track faculty have ever been required to teach the same statistics classes.

85. That on January 26, 2015, then Department head Dennis Judd ("Judd"), changed one of Plaintiff's undergraduate student's grades without consultation with him and due diligence investigation.

86. That when Plaintiff confronted Judd about changing the grade, he stated that Plaintiff, "as a foreigner, has to keep in mind who he is dealing with and what he is wishing for" he also stated that "he knows that many Koreans are stubborn and do not understand American culture of compromise when dealing with their boss."

87. That a reasonable person in Plaintiff's position would have been offended by the comments related to his heritage and national origin.

88. That similarly situated non-Korean employees were not subject to the aforementioned adverse employment actions.

89. That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost substantial income, including, but not limited to, wages and other employment benefits.

90. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and his friends, family, and colleagues.

91. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, shameful embarrassment among his friends, colleagues, and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life. For example, Plaintiff cannot have proper dental treatments for years due to high blood pressure that has been caused by depression, extreme mental anguish, outrage, and severe anxiety.

WHEREFORE, Plaintiff hereby requests that this Court provide the following equitable and legal remedies for relief:

a) Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way;

b) Order Defendants to cease and desist from unlawful discrimination and harassment on the basis of race in its employment practices;

c) Award Plaintiff backpay, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest;

d) Award Plaintiff costs of litigation, including reasonable attorneys' fees, expert fees, and expenses;

e) Award Plaintiff a judgment against Defendants for compensatory and punitive damages; and

f) Grant any other relief as this Court deems necessary and just.

**COUNT III- RACIAL HARASSMENT**

92. That Plaintiff incorporates the preceding paragraphs by reference here.

93. That Defendants' treatment of Plaintiff violated his right to be free from harassment on the basis of his race, as set forth by Title VII and 42 U.S.C. § 1981.

94. That during Plaintiff's employment with Defendants, Plaintiff performed up to and exceeded Defendants' legitimate expectations.

95. That Plaintiff is Asian.

96. That Plaintiff was required to teach statistics courses and was told that because Asians, especially Koreans, are very good at mathematics and statistics, Plaintiff is most qualified to teach the subject.

97. That no other tenured/tenure-track faculty have ever been required to teach the same statistics classes.

98. That a reasonable person in Plaintiff's position would have been offended by the comments related to his heritage and national origin.

99. That due to Plaintiff's race, he has been wrongfully accused of lacking in academic contributions, despite ample evidence to the contrary.

100. That due to Plaintiff's race, despite manifesting willingness, Plaintiff have been given no appointments to any service or administrative positions and has not been asked to supervise any dissertations.

101. That due to Plaintiff's race, Plaintiff has been penalized for his alleged lack of academic and service contribution by delays to promotions and failures to provide adequate raises.

102. That due to Plaintiff's race, the Department has stopped admitting doctoral students into his area of specialty, International Relations, and without his consultation, the Department decided to eliminate International Relations from the core sub-fields on which graduate students are required to concentrate for their degree.

103. That due to Plaintiff's race, he was initially and wrongfully denied tenure and promotion by the Department.

104. That due to Plaintiff's race, he has been denied access to input on hiring in his department, department meetings, research assistants, university programs such as paternity leave and the partner accommodation policy, and competitive counter-offers.

105. That all instances of racial harassment came from Plaintiff's supervisors who had the ability to dictate the conditions of Plaintiff's employment.

106. That the racial harassment to which Plaintiff was subjected to at the hands of Defendants and their agents, representatives and employees, was persistent in nature, unwelcome, extremely offensive, humiliating, and had the effect of creating a hostile and intimidating work environment for Plaintiff.

107. That said continuous and persistent racial discrimination and harassment adversely affected the terms and conditions of Plaintiff's employment.

108. That as a direct and proximate result of said harassment and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost substantial income, including, but not limited to, wages and other employment benefits.

109. That as a further direct and proximate result of said harassment, Plaintiff has suffered great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and his friends, family, and colleagues.

110. That as a further direct and proximate result of said harassment, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, shameful embarrassment among his friends, colleagues, and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life. For example, Plaintiff can not have proper dental treatments for years due to high blood pressure that has been caused by depression, extreme mental anguish, outrage, and severe anxiety.

WHEREFORE, Plaintiff hereby requests that this Court provide the following equitable and legal remedies for relief:

a) Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way;

b) Order Defendants to cease and desist from unlawful discrimination and harassment on the basis of race in its employment practices;

c) Award Plaintiff backpay, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest;

d) Award Plaintiff costs of litigation, including reasonable attorneys' fees, expert fees, and expenses;

e) Award Plaintiff a judgment against Defendants for compensatory and punitive damages; and

f) Grant any other relief as this Court deems necessary and just.

**COUNT IV-RACE DISCIRMINATION**

111. That Plaintiff incorporates the preceding paragraphs by reference here.

112. That Defendants' treatment of Plaintiff violated his right to be free from discrimination on the basis of his race, as set forth by Title VII and 42 U.S.C. § 1981.

113. That during Plaintiff's employment with Defendants, Plaintiff performed up to and exceeded Defendants' legitimate expectations.

114. That Plaintiff is Asian.

115. That Plaintiff was required to teach statistics courses and was told that because Asians, especially Koreans, are very good at mathematics and statistics, Plaintiff is most qualified to teach the subject.

116. That no other tenured/tenure-track faculty have ever been required to teach the same statistics classes.

117. That a reasonable person in Plaintiff's position would have been offended by the comments related to his heritage and national origin.

118. That similarly situated non-Asian employees were not subject to the aforementioned adverse employment actions.

119. That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost substantial income, including, but not limited to, wages and other employment benefits.

120. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and his friends, family, and colleagues.

121. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, shameful embarrassment among his friends, colleagues, and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life. For example, Plaintiff can not have proper dental treatments for years due to high blood pressure that has been caused by depression, extreme mental anguish, outrage, and severe anxiety.

WHEREFORE, Plaintiff hereby requests that this Court provide the following equitable and legal remedies for relief:

a) Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way;

b) Order Defendants to cease and desist from unlawful discrimination and harassment on the basis of race in its employment practices;

c) Award Plaintiff backpay, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest;

d) Award Plaintiff costs of litigation, including reasonable attorneys' fees, expert fees, and expenses;

e) Award Plaintiff a judgment against Defendants for compensatory and punitive damages; and

f) Grant any other relief as this Court deems necessary and just.

**COUNT V- RETALIATION**

122. That Plaintiff incorporates the preceding paragraphs by reference here.

123. That Defendants retaliated against Plaintiff, in violation of Plaintiff's rights pursuant to Title VII, and Section 1981.

124. That in 2010, after he was terminated by Defendants, Plaintiff brought a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") alleging race and national origin claims.

125. That Plaintiff engaged in a protected activity when he brought this charge of race and national origin discrimination against Defendants.

126. That following a mediation, Defendants reinstated Plaintiff per the terms of a settlement agreement.

127. That throughout Plaintiff's employment with Defendants, Plaintiff performed up to and exceeded Defendants' legitimate expectations.

128. That since Plaintiff's reinstatement, the discriminatory work environment he experienced prior to his EEOC complaint has persisted and worsened due to his colleagues' and Department leaders' resentment concerning his EEOC complaint.

129. That since Plaintiff's reinstatement, he has been wrongfully accused of lacking in academic contributions, despite ample evidence to the contrary.

130. That since his reinstatement, and despite manifesting willingness, Plaintiff have been given no appointments to any service or administrative positions and has not been asked to supervise any dissertations.

131. That since his reinstatement, Plaintiff has been penalized for his alleged lack of academic and service contribution by delays to promotions and failures to provide adequate raises.

132. That since Plaintiff's reinstatement, the Department has stopped admitting doctoral students into his area of specialty, International Relations and without his consultation, the Department decided to eliminate International Relations from the core sub-fields on which graduate students are required to concentrate for their degree.

133. That Plaintiff was initially and wrongfully denied tenure and promotion by the Department.

134. That since his reinstatement, Plaintiff has been denied access to input on hiring in his department, department meetings, research assistants, university programs such as paternity leave and the partner accommodation policy, and competitive counter-offers.

135. That per the terms of his reinstatement, Plaintiff was assured that any and all of his privileges as faculty would not be limited or violated.

136. That faculty are eligible for sabbatical leave when they have 6 years of service.

137. That Plaintiff has 12 years of service.

138. That despite this, Plaintiff was denied sabbatical leave because of the gap in his employment due to his previous wrongful termination.

139. That Plaintiff was explicitly told by the Department Head Dennis Jude on January 26, 2016 that his request for promotion to full professor would be unlikely to succeed because people were not happy that he had been reinstated through the outside intervention of the EEOC.

140. The Plaintiff complained about all of the aforementioned incidents to the Director of the Office of Equity and Access in approximately September of 2015 and September of 2016.

141. That Plaintiff did not file a formal complaint because he did not believe it would bring about any change.

142. That to the Plaintiff's knowledge, no action was taking following his complaints.

143. That there is a causal connection between the adverse acts directed towards the Plaintiff and his EEOC charge and reinstatement.

144. That the aforementioned adverse employment actions occurred after Plaintiff engaged in a protected activity, thereby raising an interference of retaliatory motivation.

145. That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost substantial income, including, but not limited to, wages and other employment benefits.

146. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and his friends, family, and colleagues.

147. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, shameful embarrassment among his friends, colleagues, and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life. For example, Plaintiff can not have proper dental treatments for years due to high blood pressure that has been caused by depression, extreme mental anguish, outrage, and severe anxiety.

WHEREFORE, Plaintiff hereby requests that this Court provide the following equitable and legal remedies for relief:

a) Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way;

b) Order Defendants to cease and desist from unlawful discrimination and harassment on the basis of race as well as retaliation in its employment practices;

c) Award Plaintiff backpay, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest;

d) Award Plaintiff costs of litigation, including reasonable attorneys' fees, expert fees, and expenses;

e) Award Plaintiff a judgment against Defendants for compensatory and punitive damages; and

f) Grant any other relief as this Court deems necessary and just.

Respectfully submitted,
Seung-Whan Choi

/s/ Renee C. Fell________________
Attorney for Plaintiff

Uche O. Asonye – 6209522
Renee Fell - 6312785
Asonye & Associates
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
uasonye@aa-law.com
rfell@aa-law.com

**JURY DEMAND**

NOW COMES the Plaintiff, Seung-Whan Choi, by and through his attorney, and hereby demands a trial by jury in the above entitled cause of action.

Respectfully Submitted,

Seung-Whan Choi

By: /s/ Renee C. Fell__
One of His Attorneys

Uche O. Asonye – 6209522
Renee C. Fell - 6312785
Asonye & Associates
100 North LaSalle Street, Suite 2115
Chicago, Illinois 60602
312.795.9110
312.795.9114 (Fax)
uasonye@aa-law.com
rfell@aa-law.com