UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEUNG-WHAN CHOI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 11627 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| EVAN MCKENZIE, individually, | ) | |
| DENNIS JUDD, individually, | ) | |
| DICK SIMPSON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Professor Seung-Whan Choi, who was reinstated to his post at the University of Illinois (the "University") after filing an EEOC claim, asserts that allegedly retaliatory actions taken after his reinstatement have negatively affected his career and personal life. He brings this lawsuit against the Board of Trustees of the University of Illinois (the "Board") and his supervisors, Evan McKenzie, Dennis Judd, and Dick Simpson, alleging that they discriminated against him on the basis of his race and national origin. Choi alleges violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983. Defendants move for summary judgment on all claims. The Court grants Defendants' motion because Choi cannot establish a materially adverse action for his discrimination and retaliation claims, because he cannot establish that Defendants' harassment was sufficiently severe and pervasive, and because he has waived his equal protection claim.

# BACKGROUND[1]

Choi is a full professor in the University's Political Science Department ("POLS") and a self-labeled "superstar of the department." Doc. 49 ¶ 10. He bases this label on his h-index, a measurement for how widely and frequently a researcher is cited, which is much higher than anyone else in the POLS department. He was born in South Korea and received a bachelor's degree in accounting and a master's degree in political science during his time in South Korea. While serving as an officer in the South Korean army, Choi was an instructor of "political ideology," a civic education class that persuaded new military recruits that North Korea and Communism are bad. It was not a particularly nuanced course. *Id.* ¶ 1. Choi received his Ph.D. in political science from the University of Missouri in 2002, with an emphasis in international relations. He is well versed in statistical analysis, having used it in his dissertation and a post-doctoral fellowship at Carleton College in Ottawa, Canada.

In 2004, the University hired Choi as an assistant professor in POLS. In 2010, Choi learned that the University denied his application for promotion and tenure and gave him a terminal contract. Choi is aware that Judd supported his 2010 bid for promotion and tenure at the time. He subsequently filed a charge of discrimination with the EEOC against the Board. The Board and Choi mediated the dispute, and Choi returned to the University as an associate professor with indefinite tenure and released all claims he had against the Board (and its employees and agents) arising on or before August 4, 2011.

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has considered Choi's additional facts and supporting exhibits and Defendants' response and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Choi, the non-movant.

Simpson, Judd, and McKenzie each served as POLS' department head at various times during Choi's employment. Simpson served from 2006 until fall 2012, Judd took over from fall 2012 until fall 2015, and McKenzie has been serving since fall 2015. Choi's claims in this lawsuit arise out of the following incidents:

### 1. Partner Accommodation

The University has a Partner Accommodation Policy that provides financial support to departments where "the successful recruitment or retention of a faculty member is often dependent on the availability of a suitable job for the faculty member's spouse/partner." Doc. 49 ¶ 17. The policy notes, "[i]n all cases it is important to stress that there is no guarantee of employment for a spouse/partner." *Id.* ¶ 18. In early 2012, Choi requested Simpson's assistance in securing a job for his then-fiancée who was finishing her doctorate in economics. Simpson told Choi he would review the request. Simpson inquired about an opening in the economics department, but ultimately, the economics department decided not to extend an offer to Choi's fiancée. Simpson was not involved in this decision. Simpson did offer Choi's fiancée an adjunct teaching position in POLS for the fall 2012 or spring 2013 semesters, however, which she declined. At the time Choi made the partner accommodation request, the University had employed him for eight years and he had no intention of leaving.

### 2. Parental Duties Modification

The University has a policy of providing modified duties for faculty members with a new child. Under the policy, the University can relieve a faculty member of teaching obligations for one semester. On September 10, 2014, Choi submitted his written request for modified teaching duties to Judd, who then approved the request on September 16, 2014. Although the University's policies are available online, Choi had emailed McKenzie in March 2014, stating

3

"I've also been thinking about whether I should take a parental leave in the fall or spring semester, but I have no idea how a parental leave works. If you have any suggestions for me, I'd love to hear them." *Id.* ¶ 29. McKenzie never responded. Choi did not know of the modified duties policy until another POLS professor, Petia Kostadinova, informed him about it.

### 3. Counter Offers

The University maintains a faculty counter offer policy by which "immediate offers to an employee either from outside the University or from another unit can be countered by an approved salary increase," though the University is not obligated to make such counter offers. *Id.* ¶¶ 30, 40. To make a counter offer to a faculty member, the University needs a justification from the department head and the approval of the college in which the faculty member works. Such requests are then sent to the provost for review and approval. Choi received three offers from universities in South Korea, the first in December 2010, which Choi admitted he did not want to take, the second in May 2011, which Choi also admitted he did not want to take, and the third in July 2012. *Id.* ¶ 32. The third offer would have made Choi a full professor and give him a 30% raise. The University did not make counter offers. Astrida Tantillo, the Dean of the College of Liberal Arts and Sciences, did not believe the University could afford to make a counter offer on the third offer, and generally, the College of Liberal Arts and Sciences does not provide counter offers when the offer from the other college or university is for a higher rank than the faculty member currently holds. Choi chose to stay at the University and turned down the offer for a full professorship and 30% raise.

### 4. Sabbatical

The University has a sabbatical program that allows faculty members to be relieved of teaching obligations while still receiving full or partial pay. Every six years, a faculty member

may take a sabbatical for his full salary. Faculty members may apply earlier and receive a percentage of their salary. Choi took a sabbatical in fall 2012. He applied for another sabbatical in fall 2016. After consulting Karen Sholeen, Assistant Dean of the College of Liberal Arts and Sciences, McKenzie reported to Choi that he could take a sabbatical at two-thirds pay or wait until six years had passed and reapply to receive his full pay. Choi chose to withdraw his application and reapply in fall 2017 for the spring 2019 semester, which the Board approved.

5. **Exclusion**

Choi claims Defendants excluded him from two meetings in his department. These meetings were never planned or scheduled and never actually occurred.

6. **Dissertation Advisor**

Choi claims that POLS did not assign him to supervise any doctoral dissertations. However, students request dissertation advisors; neither POLS nor the University assigns them.

7. **Ph.D. Program**

In fall 2014, following the departure of several faculty members who specialized in international relations, and the retirement of the senior political theory professor, POLS voted in favor of not offering international relations or political theory as a primary Ph.D. field, unless the relevant faculty make a special exception for a particular student.

8. **Research Assistant**

Although Choi admits that the University never denied him a research assistant, Choi claims other faculty received research assistant assignments more quickly than he did but could not name anyone who did or provide specific dates. POLS commonly assigned research assistants at the beginning of a semester.

### 9. Course Assignments

All graduate students in the political science Ph.D. program are required to take POLS 401 and 501, which are statistical methods courses. When he interviewed at the University, Choi gave a presentation using statistical analysis. He believes he has the best statistical skills of anyone in POLS. He also believes that he has the most experience with quantitative research of anyone in POLS. Indeed, Choi's research is based on quantitative analysis using statistical methods. However, Choi felt discriminated against when the Board and POLS asked him to teach POLS 401 and 501. He has not taught these courses since 2011. These days, Choi regularly teaches POLS 232, Korean Politics and Films, which he started teaching in 2010. In 2012, he had the opportunity to identify the classes he is interested in teaching and requested the opportunity to teach POLS 232 after he had already devoted a significant amount of time and effort to create lesson plans and prepare for the course. Choi also fought to save the course when POLS considered dropping it.

### 10. Promotion

The Board promoted Choi to full professor in 2016 on his first application for the position. POLS did not support Choi's promotion. Despite the department vote, the Chancellor recommended and the Board approved Choi's promotion to full professor.

### 11. Salary

Due to ongoing labor negotiations, tenured faculty members did not receive pay increases for Academic Year ("AY") 2012-2013 or AY 2013-2014 until the summer of 2014. The collective bargaining agreement ("CBA") between the Board and the faculty union, provided varying raise pools based on the combined salaries for all department members eligible to receive a raise. McKenzie recommended a retroactive 2% raise for Choi for AY 2012-2013, a

retroactive 4% raise for AY 2013-2014, and a 3.5% raise for AY 2014-2015.  Choi received these raises, which were within the parameters provided for in the CBA.  In AY 2016, Choi received a 1% raise, which was the median raise for POLS that year.  The University implemented a mid-year raise in February 2017; however, the University generally excluded from these raises faculty members who received raises due to promotions, such as Choi who received a 10% raise with his promotion in 2016.

**12.     Grade Change**

Following the fall 2014 semester, one of Choi's students contested the grade he gave her, which he had eloquently communicated her grade as "the first letter of Chicago."  Doc. 55 at 275.  Choi refused to meet with her if the inquiry was about her grade because it was after the deadline for any grade concerns.  He had already reminded her at least three times about her class performance during the semester and gave her advice on how she could earn a higher grade.  Judd met with the student and changed her grade from a C to a B without consulting Choi.  Choi claims the incident caused him to lose his "faith about education."  Doc. 49 ¶ 89.  Despite this claim, Choi remains a professor at the University.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56 & advisory committee's notes.  The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

7

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Released and Time-Barred Claims

Defendants raise two preliminary issues: (1) that Choi released all claims against the Board that occurred prior to their settlement of his EEOC charge of discrimination on August 4, 2011; and (2) that the statute of limitations bars Choi's § 1981 claim against Simpson, who stepped down as department chair more than four years before Choi filed the present suit.

#### A. Settlement Agreement with the Board

Defendants argue that Choi may not proceed on claims arising on or before August 4, 2011 based on his settlement agreement with the Board, in which he released all claims arising on or before that date. Choi does not address this argument. The Court sees no reason to ignore well established precedent and finds that the settlement and release of August 4, 2011 bars Choi's claims against the Board and its employees or agents based on incidents taking place prior to the settlement and release. *See Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) ("It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.") (collecting cases). The Court therefore will not consider claims arising out of the counter offers,

8

or lack thereof, of December 2010 and May 2011, or Choi's assignment to teach the statistical methods class, which he has not taught since 2011.

B. **Statute of Limitations for § 1981 Claims**

Defendants further argue that the Court should enter judgment for Simpson because the statute of limitations bars Choi's claims against him where Simpson ceased being the head of the POLS department more than four years before Choi filed this lawsuit. The four-year statute of limitations for § 1981 claims runs from the date of the alleged unlawful activity to the date of filing of the lawsuit. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). Choi responds and states that the statute of limitations does not act to bar his allegations arising prior to December 2012 because "they are part of the continuing discriminatory and retaliatory conduct to which [Choi] was subjected." Doc. 53 at 6. In support of this continuing violation theory, Choi relies on *Selan v. Kiley*, in which the Seventh Circuit found that a plaintiff may use this theory to avoid a statute of limitations bar when "the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment." 969 F.2d 560, 565–66 (7th Cir. 1992) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989)). Although courts consider two additional factors in the continuing violation analysis (subject matter and frequency), the notice factor is the most important. *Id.* at 566 n.7 (collecting cases labeling notice factor as "core idea," "key to the inquiry," and "the most important"). Given that Choi filed a discrimination charge with the EEOC in 2010, the Court finds that Choi should have been on notice to pay attention to subsequent discriminatory treatment. *Jones v. Merchants Nat'l Bank & Tr. Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994) ("[I]f the plaintiff knew, or with the exercise of reasonable diligence would have known after each act that it was discriminatory and

9

had harmed her, she must sue over that act within the relevant statute of limitations"). Additionally, as addressed *infra*, the Court finds that Choi did not suffer *any* materially adverse action; therefore, the Court cannot find that he suffered a "*series* of adverse actions" sufficient to establish a continuing violation. *See Selan*, 969 F.2d at 566. Thus, Choi cannot proceed on action occurring prior to 2012; however, the Court may consider it as background evidence. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (finding that time-barred claims may be used as background evidence in support of a timely claim).

This finding does not result in automatic judgment for Simpson. Choi's claims against Simpson go beyond his time as head of the POLS department, including Simpson's role on Choi's promotion committee, which are timely. Thus, the Court will consider those claims against Simpson that post-date December 2012 to the extent that Simpson acted with authority to make decisions affecting the terms and conditions of Choi's employment.

## II. Discrimination (Counts II and IV)

Choi brings claims against the Board for national origin and race discrimination pursuant to Title VII, and a race discrimination claim against McKenzie, Judd, and Simpson pursuant to § 1981. Because Title VII and § 1981 cases are "essentially identical" in their elements and methods of proof, the Court uses the same analysis for both claims. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013).

Title VII makes it unlawful for an employer to discriminate against any individual because of the individual's national origin or race. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010). Recently, the Seventh Circuit has simplified the analysis of these issues; the question now is "whether the evidence would permit a reasonable factfinder to

conclude that the plaintiff's race [or national origin] . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Choi's discrimination claims all share one fatal flaw: he has not suffered an actionable adverse employment action. "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citation omitted) (internal quotation marks omitted). Although materially adverse employment actions extend beyond quantifiable losses, not everything that causes an employee to be unhappy at work is actionable as an adverse action. *Id.* If that were the case, anything that an employee did not like could form the basis of a discrimination suit. *Id.* There are three categories of materially adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Id.*

Defendants argue that Choi's complaints regarding partner accommodation, parental duties modification, counter offers, sabbatical, exclusion from meetings, dissertation advising, research assistants, Ph.D. program oversight, course assignments, the promotion and tenure process, salary adjustments, and grade changes do not rise to the level of materially adverse actions. Although Choi does not directly respond to the issue of materially adverse actions,[2] the

---

[2] The entirety of Choi's response on this critical component of his discrimination claim is the single following sentence: "[t]he question of whether a change in an employee's working conditions is

11

Court addresses each claimed adverse action in turn. The Court finds that none of the instances about which Choi complains amounts to a materially adverse action.

### A. Partner Accommodation Program

Choi asserts that in early 2012 the Board and Simpson failed to hire his spouse through the University's Partner Accommodation Program, a program that emphasizes that there is no guaranteed accommodation. Simpson inquired about an opening in the Economics Department and offered Choi's spouse an adjunct teaching position in the POLS Department, which she declined. Simply put, Choi was not entitled to any accommodation for his spouse. Nonetheless, Simpson made inquiries and offered Choi's spouse a position. While the position offered was not Choi's preferred outcome, the process and result did not amount to a materially adverse action.

### B. Modified Teaching Duties

In anticipation of his son's birth, Choi requested and received modified teaching duties. Choi's complaint that McKenzie's failed to respond to Choi's email does not satisfy the elements for a materially adverse action such that Choi can bring a claim for discrimination on this basis. McKenzie's lack of a timely response did not delay Choi's modified teaching duties or cause him to miss out on the opportunity.

### C. Counter Offers

Choi complains that he did not receive any counter offers, but counter offers, like the partner accommodation, are retention tools the University can use to keep faculty members from leaving the University. The University is not obligated to provide faculty with these benefits nor does the University guarantee that it will provide them should the circumstance arise. The

---

materially adverse is normally a question of fact." Doc. 53 at 10 (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 273–74 (7th Cir. 1996)).

University's decision to decline to make Choi a counter offer did not prevent Choi from accepting these offers or from deciding to reject them and remain at the University. The University's action did not change Choi's employment conditions at the University; rather, it maintained the status quo. Thus, the Court does not find this action to be materially adverse.

### D. Sabbaticals

Choi asserts that the University discriminated against him in processing his request for a sabbatical. The parties agree that Choi received a sabbatical and then applied for a second one prior to the date before which he was eligible. In response to Choi's request for a second sabbatical, the University offered to follow its policy and pay him a diminished salary during this time or allow him to reapply timely and receive his full salary, which Choi successfully did. The University's actions here do not amount to a materially adverse employment action where Choi received a second sabbatical at full salary within the time period set by the University.

### E. Exclusion from Department Meetings

Choi argues that he was excluded from two departmental meetings that he assumed took place. These meetings did not take place. Because no Defendant excluded Choi from departmental meetings, he did not suffer an adverse employment action.

### F. Supervision of Doctoral Dissertations

Choi alleges that the fact that the University has not assigned him to supervise any doctoral dissertations amounts to an adverse employment action. However, the University does not assign doctoral dissertations. Rather, individual students request specific advisors from the University. Because the University nor any Individual Defendant is not responsible for assigning faculty to supervise doctoral dissertations, Choi cannot base a claim for discrimination against Defendants on this action. Additionally, Choi has not asserted how the failure to supervise

13

doctoral students has adversely impacted his employment. Thus, the Court finds that this does not rise to a materially adverse employment action.

## G. Assignment of Research Assistants

While Choi complains that Defendants did not provide him with a research assistant or assigned him a research assistant late, he admits that the University never denied him a research assistant. Choi does not contend that he ever received a research assistant after the beginning of the semester, which is when the University generally assigns them. Because Choi received a research assistant when requested, he cannot base a claim of discrimination on a lack of a research assistant.

## H. Field of Study and Course Assignments

Choi complains that his area of focus, international relations, is no longer a primary field for the Ph.D. program in political science and students can only elect it as a secondary field. Choi does not assert any facts that might show how this change adversely affected the terms and conditions of his employment. Thus, the Court finds that this is not a materially adverse employment action.

Additionally, Choi protests about Defendants' teaching assignment of Political Science 401 and 501, which are statistical methods courses, and 232 which is a Korean politics course. Choi has not taught the 401 or 501 courses since 2011. As such, the 2011 settlement agreement and release covers this part of his claim and Choi cannot pursue it. Choi began teaching the Korean politics course in 2010, he requested the opportunity to teach it again in 2012, and in 2017, he voiced his opinion to save the course from being dropped. It defies logic that Choi has suffered a materially adverse action by teaching a course that he requested to teach and fought to save. Thus, Choi cannot base a discrimination claim on this action.

### I. Promotion and Pay Raises

Choi also complains that, although the Board promoted Choi to full professor on his first application for promotion, the POLS department recommended against it. Choi makes no claim that the recommendation by the POLS department delayed or hindered his promotion.

Although Choi claims that "his excellent work is not rewarded by [the University] and his requests for promotions and adequate raises have been flatly rejected," the evidence points to the contrary. Choi received a promotion to full professor on his first application; furthermore, he received raises, like the rest of the department, in compliance with the collective bargaining agreement between the Board and the faculty union. At the time he filed this suit, Choi was the second highest paid professor in the POLS department, second only to Simpson, who started working at the University over fifty years ago in 1967. Choi's self-conducted analysis of net raises in the department ignored raises for promotions and leadership positions, like the 10% raise he received with his promotion. The Court finds that Choi has failed to adduce facts sufficient to show he suffered a materially adverse employment action based his promotion history and pay raises.

### J. Student Grades

Finally, Choi complains that Judd changed one of his student's grades. Choi makes no argument as to how this action changed the terms or conditions of his employment. Rather, this action may rise to the level of an annoyance but the Court finds that Choi has not demonstrated that it is a materially adverse employment action. Thus, the Court finds that Choi cannot base a claim of discrimination of this action.

Because each incident of which Choi complains is either a benefit for which he was never entitled, like the partner accommodation and counter offers, or a benefit he actually received,

like the parental duties modification, sabbatical, research assistants, course assignments, promotion and raises, or a mere inconvenience that did not affect the terms and conditions of his job in any material way, like the exclusion from non-existent meetings, students not requesting him as an advisor, Ph.D. program changes, and student grade alteration, the Court finds that Choi did not suffer a materially adverse employment action. *Nichols*, 510 F.3d at 780 ("A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities."). The Court, therefore, finds in favor of Defendants on their motion for summary judgment on Choi's discrimination claims in Counts II and IV.

### III. Retaliation (Count V)

Choi brings a retaliation claim against the Board pursuant to Title VII and against McKenzie, Judd, and Simpson pursuant to § 1981. Title VII makes it unlawful for an employer to retaliate against an employee because he has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation, which would include the charge of discrimination Choi made to the EEOC. *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 56, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citing 42 U.S.C. § 2000e–3(a)). To prevail on his retaliation claim, Choi must show that "(1) he engaged in a statutorily protected activity, (2) he suffered a materially adverse action by his employer, and (3) a causal connection exists between the two." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Choi's retaliation claim fails for the same reason as his discrimination claims: Choi cannot show a materially adverse action.

The standard for a materially adverse action in a retaliation context is more lenient than in a discrimination context. *See White*, 548 U.S. at 56. Even so, "material adversity" must rise to such a level that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *See, e.g.*, *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) (unfair

16

reprimands, performance improvement plans, or negative performance reviews unaccompanied by tangible job consequences do not constitute adverse action); *Bagwe v. Sedwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016) (performance improvement plan and the company's investigation did not constitute adverse action). Just as in the discrimination analysis, nothing materially adverse happened to Choi. He requested a sabbatical and received it. He sought modified duties and got them. He applied for a promotion and received it on his first application. A changed grade, a less desirable employment offer to his fiancée, and the University's decision not to extend counter offers that it could not afford did not result in any material harm to Choi, and therefore are not materially adverse. *Sacramento v. City of Chicago*, No. 07 C 4267, 2010 WL 2740305, at *10 (N.D. Ill. July 12, 2010) ("An unfulfilled threat, which results in no material harm, is not materially adverse.") (citing *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003)).

Because Choi has not suffered a materially adverse action in the retaliation context either, the Court finds in favor of Defendants on their motion for summary judgment on Choi's retaliation claims, Count V.

## IV. Hostile Work Environment (Counts I and III)

Choi brings a hostile work environment claim based on his national origin and race against the Board pursuant to Title VII. He brings a similar claim based on his race against McKenzie, Judd, and Simpson pursuant to § 1981. To establish a hostile work environment, a plaintiff must provide evidence that: "(1) [ ]he was subject to unwelcome harassment; (2) the harassment was based upon a protected characteristic; (3) 'the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment'; and (4) 'there is a basis for employer liability.'" *Atanus v. Perry*,

17

520 F.3d 662, 676 (7th Cir. 2008) (quoting *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)). The Court finds that Choi cannot show that the harassment was severe and pervasive, or that the harassment was based upon a protected characteristic.

Determining whether the conduct rises to the level of severe and pervasive depends on a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005) (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000)). A plaintiff must establish that the work environment was both subjectively and objectively offensive. *Id.* (citing *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003); *Hostetler*, 218 F.3d at 807). Vague and conclusory allegations about hostile conditions, without specific support in the record, are insufficient to survive summary judgment. *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 979–80 (N.D. Ill. 2014).

Choi offers two quotes from Simpson and Judd that he claims are offensive: "Koreans are good at math," and "Koreans are stubborn and do not understand American culture of compromise when dealing with their boss," respectively. Doc. 53 at 9, 13. Such comments may be rude and inappropriate; however, they are not so severe as to change the conditions of an employee's employment. *Ezell*, 400 F.3d at 1048 (finding that comments reflecting ignorant stereotypes of older workers are not severe). Furthermore, two comments throughout the course of Choi's twelve-year employment at the University are not severe and pervasive enough to survive a summary judgment motion. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) (finding that supervisor's sporadic comments did not rise to the level of an objectively hostile work environment).

Choi also complains of the various instances analyzed above: department meetings, research assistants, competitive counter-offers, and sabbatical leave. Even taken together under the more lenient "totality of the circumstances" standard, none of these complaints affected Choi in any materially adverse manner, and therefore, even combined, they still do not rise to a level that is sufficiently severe and pervasive. *Mason*, 233 F.3d at 1044–45 (finding under the totality of the circumstances approach, all instances of harassment by all parties are relevant to proving that hostile environment is sufficiently severe and pervasive).

Furthermore, Choi does not argue that they are linked to his national origin or race. Choi merely states he "could rationally consider himself at a disadvantage in relation to other co-workers by virtue of being Korean-American," without asserting that any of these instances, besides the two quotes for which this factor is self-evident, are based on his race. *See* Doc. 53 at 14. The vague and conclusory statement linking these complaints to Choi's national origin or race are insufficient to establish hostile conditions. *See Hoosier*, 32 F. Supp. 3d at 980.

Because the harassment was not severe and pervasive enough to rise to the level of a hostile work environment, and the bulk of Choi's harassment complaints were not linked to his national origin or race, the Court finds in favor of Defendants on their motion for summary judgment on Choi's harassment claims in Counts I and III.

## V.     Equal Protection (Count VI)

Finally, Choi brings a § 1983 equal protection claim against McKenzie and Judd. To prevail on this claim, Choi must show that: (1) he had a constitutionally protected right; (2) he was deprived of that right in violation of the Constitution; (3) Defendants intentionally caused this deprivation; and (4) Defendants acted under color of state law. *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir. 1990) (citations omitted). Defendants argue that Choi cannot establish the

19

second factor, that he was deprived of a constitutionally protected right in violation of the Constitution. Choi does not respond and has therefore waived this claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument. . . results in waiver."). Thus, the Court finds in favor of Defendants on this claim as well.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [47]. The Court enters judgment for Defendants and terminates this case.

Dated: April 3, 2019

_____
SARA L. ELLIS
United States District Judge